## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PATRICIA DURRELL, | : | |
| Plaintiff, | : | Case No. 3:06CV239 |
| vs. | : | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.    INTRODUCTION

Plaintiff Patricia Durrell suffers from multiple medical problems including, to name a few, back pain, leg pain, and depression.  (Tr. 114).  These medical problems led her to seek assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB).

After initial administrative denials of her DIB application, Administrative Law Judge (ALJ) Melvin A. Padilla, held a hearing during which Plaintiff and a vocational expert testified.  ALJ Padilla later issued a written decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act.  (Tr. 19-32).

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

The ALJ's non-disability determination and resulting denial of DIB became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), the administrative record, and the record as a whole.

Plaintiff seeks, at a minimum, a remand of this matter to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.    ADDITIONAL BACKGROUND

At the time of the ALJ's hearing, Plaintiff's age (forty-three) placed her in the category of a "younger person" for purposes of resolving her DIB application.  *See* 20 C.F.R. §404.1563(c).  She earned a high school education and most recently worked in the food service industry.  (Tr. 73, 120, 129).  Plaintiff's husband died in 1998.  Her two children, who are young adults, and a granddaughter were living with her at the time of the ALJ's hearing.  (Tr. 358).

During the ALJ's hearing, Plaintiff testified that she could not work because of chronic back pain that shoots pain into her legs and arms.  She wore a TENS[2] unit for daily pain management.  (Tr. 44).  Injections, physical therapy, and medications provided

---

[2]  "TENS" refers to transcutaneous electrical nerve stimulation.  *See* Taber's Cyclopedic Medical Dictionary at p. 2061 (19th Ed. 2001).

2

only minor pain relief. (Tr. 44-45). Arthritis also caused her pain in several joints of her body including her legs, spinal area, fingers, elbows, ankles, and one thumb. (Tr. 46).

Plaintiff stated that she was most comfortable if she sat in a recliner or if she changed positions. (Tr. 49). She might nod off for thirty minutes during the day but did not sleep during the day. (Tr. 50). She could not walk for more than five minutes, stand for more than five-to-ten minutes or sit for more than ten minutes without taking a break. (Tr. 51).

Plaintiff testified that she could lift five pounds. (Tr. 52). At the time of the ALJ's hearing, she had used a cane for five months to help her balance and to relieve the strain on her back. (Tr. 57). Arthritis in her hands or carpal tunnel sometimes made it hard for her to open things or even hold onto a cane. (Tr. 64). Her daughter did the cooking and other household chores like washing dishes, sweeping, mopping, or vacuuming. Plaintiff sometimes did the laundry, but her daughter generally did it for her. (Tr. 52). Plaintiff could make her bed and do a little dusting. (Tr. 52-53).

Plaintiff explained that she had trouble with anxiety and depression. She testified, "Well, I get into a point where I don't be around people, I close myself off and go into my room and don't be bothered with anybody. And I get into my crying spells." (Tr. 46). She mostly kept to herself, although she lived with her daughter and talked to her son in Alabama by telephone. (Tr. 47). She reported having anxiety attacks twice a week. "The anxiety, the type I'm having where I can't breathe, it's a choking feeling and I just feel like everything is just closing in on me and I get a shortness of breath from that." (Tr.

48).   When this occurred she tried to go outside and get some air.  An attack would last

for thirty to forty-five minutes.  She receives counseling and takes medication for anxiety,

as prescribed by her psychologist, Gloria Ross, Ph.D.[3]  *Id.*  Taking medication did not

stop her anxiety attacks.  (Tr. 49).

Plaintiff had lost interest in her previous hobbies.  She seldom used the computer

unless she needed to check the side effects of medication.  (Tr. 53).  She had trouble

concentrating well enough to read.  (Tr. 54, 66).

At the time of the ALJ's hearing, in addition to her anxiety medication, Plaintiff

was taking Vicodin for pain management and Bextra for arthritis.  (Tr. 45-46).  She had

tried different medications without relief.  *Id.*; *e.g.,* Tr. 343, 369, 447 (listing various

meds).

Turning to other evidence, the parties have provided detailed and informative

descriptions of Plaintiff's medical records and other pertinent evidence and information in

the administrative record.  *See* Doc. # at 1-9; Doc. #8 at 1-9.  In light of this, and upon

consideration of the complete administrative record, there is no need to fully reiterate or

expand upon the parties' descriptions.

## III.    THE "DISABILITY" REQUIREMENT
##         AND ADMINISTRATIVE REVIEW

The term "disability" – as defined by the Social Security Act – carries a

---

[3]   References to "Dr. Ross" throughout this Report focus on records and information provided by
Gloria Ross, Ph.D.  This should avoid confusion with medical records provided by Suzanne Ross, M.D.,
Plaintiff's treating physician, who is not otherwise mentioned herein.

4

specialized meaning of limited scope.  Narrowed to its statutory meaning, a "disability"

includes only physical or mental impairments that are "medically determinable" and

severe enough to prevent the claimant (1) from performing his or her past job, and (2)

from engaging in "substantial gainful activity" that is available in the regional or national

economies.[4]  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

      Social Security Regulations require ALJs to resolve a disability claim through a

five-Step sequential evaluation of the evidence.  *See* Tr. 23-31; *see also* 20 C.F.R.

§404.1520(a)(4).  Although a dispositive finding at any Step terminates the ALJ's review,

*see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the

sequential review considers and answers five questions:

    1.    Is the claimant engaged in substantial gainful activity?

    2.    Does the claimant suffer from one or more severe impairments?

    3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

---

    [4] Impairments must also be either expected to cause death or last twelve months or longer.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

F.3d 348, 354 (6th Cir. 2001).

In the present case, the ALJ found at Steps 2 and 3 of his sequential analysis that Plaintiff suffers from severe impairments of mild osteoarthritis with possible inflammatory component in multiple joints and depression with features of anxiety, but her impairments did not satisfy the criteria under any impairment identified in the Listings.  (Tr. 31).

At Step 4 the ALJ also determined that Plaintiff had the ability to perform a limited range of medium exertional work[5] as follows:

> The claimant can lift up to fifty pounds occasionally and twenty[-] five pounds frequently; she must have the option to alternate positions as needed; she must have a temperature-controlled environment; and she is limited to low stress jobs with no fast-paced work or production quotas, no dealing with the public, no over-the-shoulder supervision, and no extended periods of concentration....

(Tr. 31).  The ALJ also concluded at Step 4 that Plaintiff's subjective descriptions of her impairments were not "totally credible."  (Tr. 31).

These above findings, along with the ALJ's findings throughout his sequential evaluation, led him to conclude that Plaintiff was not under a disability and hence not eligible for DIB.

## IV.    JUDICIAL REVIEW

Judicial review determines whether substantial evidence in the administrative

---

[5]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...."  20 C.F.R. §404.1567(c).

record supports the ALJ's factual findings.  *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).  "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)).  It consists of "'more than a scintilla of evidence but less than a preponderance...'"  *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo*.  *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  An ALJ's factual findings must be upheld "as long as they are supported by substantial evidence."  *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).  Once substantial supporting evidence is found in the administrative record, courts do not consider whether they agree or disagree with the ALJ's findings or whether the administrative record contains contrary evidence.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, substantial evidence is not the analytical finish line.  Judicial review further considers whether the ALJ "applied the correct legal criteria."  *Bowen*, 478 F.3d at 746.  If the ALJ does not, the decision may not be upheld even if the findings are supported by substantial evidence.  *See id*.  For example, a decision will not be upheld where the ALJ failed to apply mandatory procedural rules and standards established by the Commissioner's Regulations and where that failure prejudices a claimant on the merits or

7

deprives the claimant of a substantial right.  *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## V.    DISCUSSION

### A.    The Parties' Contentions

Plaintiff contends that substantial evidence does not support the ALJ's assessment of her residual functional capacity or his finding that she retains the ability to perform other work.  Plaintiff asserts that the ALJ erred in his evaluation of her treating psychologist Dr. Gloria Ross's opinions, by neither applying nor explaining his application of the required regulatory factors.  As to the opinions of two non-treating state agency physicians, Drs. McIntosh and Olson, Plaintiff contends that nothing in the ALJ's decision indicates that he considered the regulatory factors when evaluating their opinions.  Plaintiff emphasizes, "It is not, in fact, entirely clear upon whose opinion he relied in reaching his conclusions concerning mental functional capacity, although he seemed to favor Dr. Olson."  (Doc. #7 at 15).

The Commissioner argues that the ALJ's evaluation of Dr. Ross's opinions was not flawed because the forms she completed contain contradictory findings, and because the ALJ considered the few consistent findings in Dr. Ross's two forms along with the other mental health evidence of record, including the reports of Drs. McIntosh and Olson. According to the Commissioner, "The ALJ's mental RFC finding represents a reasonable assessment of Ms. Durrell's abilities in light of the contradictory evidence regarding her mental health."  (Doc. #8 at 1).

8

### B.    <u>Applicable Legal Criteria</u>

An ALJ's evaluation of the various medical source opinions of record begins with treating physicians or psychologists.  Under the treating physician rule, the opinions of treating medical sources are entitled to controlling weight as long as the opinions are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record.  20 C.F.R. §404.1527(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

If these requirements are not met, the treating physician rule does not apply.  *Id*. In that event, the evaluation has only just begun:  ALJs must continue to weigh the treating source's opinion under the other factors, including, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion."  *Wilson*, 378 F.3d at 544 (discussing §404.1527(d)).

As to non-treating medical sources, ALJs must evaluate their opinions under the factors of supportability, consistency, specialization, *etc*., described in 20 C.F.R. §404.1527(d).  The Commissioner's Ruling explains this regulatory mandate, stating, "the rules for considering ... treating sources ... also apply when we consider the opinions of nonexamining sources, including State agency medical ... consultants and other program physicians and psychologists."  Social Security Ruling 96-6p, 1996 WL 374180 at *2. The plain language of the Regulations appears to emphasize the mandatory nature of this

requirement by reiterating it no less than three times.  *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §404.1527(f)(iii) (same as to medical experts' opinions).

**C.    Analysis**

A review of the ALJ's decision reveals (1) no reference or description of the legal criteria applicable under the treating physician rule, which must be considered with regard to treating psychologists; (2) no specific citation to the Regulation containing the treating physician rule , 20 C.F.R. §404.1527(d)(2); (3) no actual application of the legal criteria set forth in §404.1527(d)(2) to Dr. Ross's opinions; and (4) no evaluation of Dr. Ross's opinions under the remaining regulatory factors – supportability, consistency, specialization, etc.  *See* Tr. 24-25, 27-28.  For these reasons, the ALJ erred by not weighing Dr. Ross's opinions under the applicable legal criteria.  In addition, without an application of the required legal criteria to Dr. Ross's opinions, the ALJ erred by not providing a good explanation for his decision not to fully credit the limitations embodied in Dr. Ross's opinions.  *See Wilson*, 378 F.3d at 544.

The ALJ also failed to apply any of the regulatory factors to the opinions of non-treating, the one-time examiners, Craig Olson, Psy.D., and Williams McIntosh, Ph.D.  The ALJ's decision neither considers nor mentions the factors of supportability or consistency to their opinions and does not refer to any other factor, such as specialization, when discussing these non-treating medical source opinions.  *See* Tr. 27-28.  This was not

10

only contrary to the Regulations, *see supra*, §V(B), it was also contrary to the

Commissioner's Rulings, which explain:

> [T]he opinions of State agency medical and psychological consultants ... can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Social Security Ruling 96-6p, 1996 WL 374180 at *3.

There remains the possibility that the ALJ's errors were harmless, *see Bowen*, 478

F.3d at 747-49, an issue Plaintiff addresses but the Commissioner does not specifically

address. The Commissioner, finding no error in the ALJ's decision, argues that certain

regulatory factors and evidence supports the ALJ's evaluation of Dr. Ross's opinions.

The Commissioner emphasizes that Dr. Ross's opinions were self-contradictory and

therefore deserved little or no weight.

Whether or not the Commissioner has correctly applied the factors to the evidence,

the Commissioner's arguments present the type of evaluation of these medical source

opinions that is missing from the ALJ's decision. The harmless-error issue, then, is

whether the ALJ's decision, the evidence of record, or the Commissioner's arguments

provide a sufficient basis for overlooking the ALJ's errors. *See Bowen*, 478 F.3d at 747-

48; *Wilson*, 378 F.3d at 546-47.

It is highly doubtful that the Commissioner's *post-hoc* application of the required regulatory factors can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh the treating and non-treating medical sources' opinions as required by the Regulations. "A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because the [aggrieved party] appears to have had little chance of success on the merits anyway.' To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546 (internal citations omitted).

The ALJ's errors when evaluating Dr. Ross's opinions were not harmless due to his explanations and in the presence of supporting objective evidence. *See* Tr. 344-45; *see also Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47. The Commissioner accurately points out that Dr. Ross did note, "If allowed to work on her own she could perform basic tasks..." (Tr. 347). This note, however, must not be read out of context,

12

particularly upon a harmless-error review.  The specific harmless-error issue with regard to Dr. Ross's opinion was "so patently deficient that the Commissioner could not possibly credit it...." *Wilson*, 378 F.3d at 547.  Considering Dr. Ross's reports in their entirety, her one reference to Plaintiff's ability to do basic tasks if left alone to work does not nullify the many serious limitations Dr. Ross identified.  For example, specifically, Dr. Ross concluded that Ms. Durrell would have "poor" or no ability to deal with the public or with work stresses and only a fair ability to relate to co-workers, supervisors, and maintain attention/concentration.  (Tr. 353).  She had only a fair ability to understand, remember and carry out detailed or complex job instructions, yet her ability to understand, remember and carry out simple job instructions was good.  (Tr. 354).  Dr. Ross specifically noted that it was Plaintiff's "periods of depression and anxiety" that interfered with her ability to make occupational adjustments, such as dealing with work stresses or the public.  (Tr. 353-54).

In addition, the Commissioner's reliance on the opinions of Drs. Olson and McIntosh does not show harmless error because the ALJ did not apply any of the required legal criteria to their opinions.  At best for the Commissioner, his analytical approach employs a post-hoc application of the required legal criteria to these medical source opinions.  Such weighing must be done first at the administrative level in this case, for all the above reasons.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source

opinions are well taken.[6]

## VI.    REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of her disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration for further proceedings pursuant to sentence four of §405(g) due to the ALJ's failure to weigh the medical source opinions of record as required by the Regulations and due to errors in the ALJ's credibility determination.  On remand, the Commissioner and the ALJ should be directed to (1) re-evaluate the medical source

---

[6]  In light of the above review, and the resulting need for remand of this case, an in-depth analysis of the parties' contentions about Plaintiff's credibility is unwarranted.

14

opinions and the remaining evidence of record under the legal criteria set forth in the

Commissioner's Regulations, Rulings, and as required by case law; and (2) to determine

anew whether Plaintiff is under a disability within the meaning of the Social Security Act.

 Accordingly, the case must be remanded to the Commissioner and the ALJ under

sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Report

and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Patricia Durrell was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

February 22, 2008

s/ Sharon L. Ovington<br>Sharon L. Ovington<br>United States Magistrate Judge

15

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).